UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,
          Plaintiff,

v.                                      Case No. 17-CR-168

ROMELL LEWIS,
          Defendant.

## RECOMMENDATION AND ORDER

**1. Procedural History**

On August 10, 2017, a Milwaukee County Circuit Court Commissioner issued a search warrant for 2947 North 24th Place in Milwaukee. (ECF No. 17-1.) Romell Lewis was arrested and, after being advised of his *Miranda* rights, gave an incriminating statement. (ECF No. 18 at 1.) The grand jury returned an indictment on October 3, 2017, charging Lewis with possessing three firearms after having been convicted of a felony, possessing marijuana with the intent to distribute, and possessing three firearms in furtherance of a drug trafficking crime. (ECF No. 1.)

On July 25, 2018, Lewis filed three pretrial motions: a motion to suppress physical evidence (ECF No. 17); a motion to suppress his statement (ECF No. 18); and a motion for immediate disclosure of details regarding the confidential informant (ECF No. 19). The briefing on these motions is complete.

## 2. Motion to Suppress Physical Evidence

Milwaukee Police Officer (and federal task force officer) Rodolfo Ayala submitted an affidavit in support of a warrant to search 2947 North 24th Place in Milwaukee. Because the affidavit was the sole factual basis for the issuance of the search warrant, the court considers only it in assessing whether the warrant was supported by probable cause. *See United States v. McMillian*, 786 F.3d 630, 639 (7th Cir. 2015).

"Probable cause exists when, based on the totality of the circumstances, there is a fair probability that a search will uncover contraband or evidence of a crime." *United States v. Thompson*, 801 F.3d 845, 847 (7th Cir. 2015) (per curiam). When an affidavit in support of a search warrant is based on information from an informant, the court considers "(1) the degree to which the informant has acquired knowledge of the events through firsthand observation, (2) the amount of detail provided, (3) the extent to which the police have corroborated the informant's statements, and (4) the interval between the date of the events and the police officer's application for the search warrant." *Thompson*, 801 F.3d at 848 (quoting *United States v. Sutton*, 742 F.3d 770, 773 (7th Cir. 2014)).

The most relevant paragraph of Ayala's affidavit states as follows:

That affiant was contacted by the confidential informant who informed affiant that within the past fourteen (14) days that the confidential informant was inside of a residence located at 2947 North 24th Place in the City and County of Milwaukee State of Wisconsin when the confidential informant stated that the confidential informant observed a firearm. The confidential informant knew the firearm to belong to "Mel"; that the

confidential informant further informed affiant that it was the confidential informant's belief that "Mel" is a convicted felon and therefore prohibited from the possession of a firearm. The confidential informant also knows for "Mel" to conduct drug transactions of marijuana. The confidential informant observed "Mel" weighing and packaging marijuana for distribution in the residence at 2947 North 24th Place within the last 7 days. The confidential informant has known "Mel" to sell high levels of marijuana on a daily basis for the past 6-9 months and knows for "Mel" to always store the marijuana at 2947 North 24th Place.

(ECF No. 17-1, ¶ 11.)

The confidential informant subsequently identified "Mel" as Romell Lewis based on a booking photograph provided by Ayala. Ayala independently learned that Lewis listed his address as 2947 North 24th Place with the Wisconsin Department of Transportation (ECF No. 17-1, ¶ 13) and that he had been convicted of armed robbery and, therefore, was prohibited from possessing a firearm (ECF No. 17-1, ¶ 14).

With respect to the confidential informant's reliability, Ayala's affidavit states:

That affiant believes that the confidential informant is a credible person because the confidential informant has been extensively questioned by affiant and federal law enforcement officials within the State of Wisconsin as to other individuals whom affiant is currently investigating who are involved in drug trafficking and the prohibited possession of weapons; that affiant is aware that the confidential informant did provide details of these drug trafficking organizations which affiant found to be truthful, reliable, accurate as well as useful in these upcoming investigations; that affiant is aware that the confidential informant did provide information to affiant that led to a search warrant where an individual was arrested with said firearm and narcotic that confidential informant said would be in residence. This individual has been convicted and sentenced for said crime; that affiant is aware that the confidential informant did provide information on a wanted subject who was later arrested for the valid Felony warrant.

(ECF No. 17-1, ¶ 8.)

If the affidavit were presented to this court in support of a request for a search warrant, the court likely would have many questions. But "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause" and thus courts afford "great deference" to the conclusion of the judicial officer who issued the warrant. *United States v. Leon*, 468 U.S. 897, 914 (1984) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)); *see also Thompson*, 801 F.3d at 847. Thus, the relevant inquiry is not whether the affiant could have said more but rather whether he said enough. *See United States v. Garcia*, 528 F.3d 481, 486 (7th Cir. 2008).

The court finds the affidavit to be borderline with respect to establishing probable cause, even taking into account the deference a reviewing court affords the conclusion of an issuing court. As is to be expected, *see Leon*, 468 U.S. at 924-25, courts reviewing borderline cases routinely skip over the probable cause analysis and instead conclude that the evidence is nonetheless admissible under *Leon*'s good faith exception. *See, e.g.*, *Thompson*, 801 F.3d at 848 ("All that said, we need not decide whether the state judge who issued the warrant had a basis for finding probable cause, since the search of Thompson's residence survives a motion to suppress under the good-faith exception of *Leon*."); *United States v. Stevens*, 380 F.3d 1021, 1025 (7th Cir. 2004) ("Although it is debatable whether the affidavit contained sufficient facts to establish probable cause, it

4
Case 2:17-cr-00168-PP    Filed 08/24/18    Page 4 of 14    Document 31

is not so devoid of facts that a reasonable officer could not have believed probable cause existed."); *United States v. Garey*, 329 F.3d 573, 577 (7th Cir. 2003). However, the court finds it prudent not to skip this step and instead determine whether probable cause exists.

In *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003), an informant claimed to have been in Peck's home within the past two days and observed large amounts of what Peck referred to as crack cocaine and marijuana, and which the informant recognized as such based on her own experiences. *Id.* at 755. The informant had not previously proved reliable, and she admitted that she was coming forward because she was upset that Peck was not paying for diapers for their child. Nevertheless, the informant appeared before a judge and swore to the truth of her statements. *Id.* The court concluded that the warrant failed to establish probable cause. The informant "failed to give specific details about the drugs in Peck's house such as where the drugs were hidden, the total amount of drugs Peck possessed, or the frequency with which Peck sold drugs. The only details [the informant] gave were that she had been in the house and was shown drugs." *Id.* at 756. Moreover, "even though [the informant] stated that she was Peck's girlfriend, she was unable to give any information regarding Peck other than that he was a black male." *Id.* Nor did the affidavit describe how the informant knew the substances were illegal drugs other than ambiguously referring to her "personal experiences." *Id.* at 756-57. "Compounding the weaknesses of [the informant's] statement is the failure of the

5

police to corroborate her allegations. The only effort made by police to corroborate [the informant's] statements was a check of Peck's record, which showed that Peck had previously been arrested for drug possession." *Id.* at 757.

In *Garcia*, despite acknowledging that the affidavit lacked certain expected details, the Court of Appeals for the Seventh Circuit found that "a sensible judge could find that the affidavit here set forth sufficient facts to establish probable cause" because

> [t]he information obtained from the informant was based on firsthand observations. The affidavit specifically stated that the informant had been inside the apartment and had observed a substance he believed to be cocaine, packaged in a plastic baggie, in the living room. The affidavit also explained that the informant believed the substance was cocaine because he had been involved in selling cocaine in the past. The time lapse between the officers acquiring of the information and their application for the warrant--no more than 72 hours--was short. And the affidavit provided information to establish the credibility of the informant: the informant had previously provided information leading to the arrest of at least three other individuals.

528 F.3d at 486.

The court finds the present case sufficiently analogous to *Garcia* so as to require the same conclusion. The information in Ayala's affidavit was based on the informant's first-hand observations. Ayala corroborated the informant's information, albeit minimally, by having the informant identify Lewis from a photograph and by confirming the accuracy of the informant's belief that Lewis was a felon. In addition, marijuana is readily identifiable, especially when seeing it being weighed and packaged. When considered in the context of the informant reporting that Lewis had

been engaged in daily marijuana sales for the past six to nine months, the informant's information—seven days old—was relatively recent. And given that a firearm is not likely to be disposed of, the informant reporting having seen a firearm at the residence 14 days before was also recent. *See United States v. Harju*, 466 F.3d 602, 608 (7th Cir. 2006) (discussing a three-week gap between the observation of the firearm and the issuance of the search warrant). And the informant had previously proven to be reliable.

Therefore, the court concludes that the search warrant was supported by probable cause.

**2.1 *Leon* Good Faith Exception**

Even absent probable cause, suppression would nonetheless be inappropriate. Under the good faith exception to the probable cause requirement, a police officer is generally entitled to rely on the conclusion of an issuing judicial officer and presume a search warrant is valid. *See Leon*, 468 U.S. at 922. Ayala's "decision to obtain a warrant is prima facie evidence that he was acting in good faith." *Thompson*, 801 F.3d at 848. It is frequently said that a defendant may rebut prima facie evidence of good faith "by showing that (1) the judge issuing the warrant abandoned his detached and neutral role; (2) the officer was dishonest or reckless in preparing the affidavit; or (3) the warrant was so lacking in probable cause that the officer's belief in its existence was entirely unreasonable." *See, e.g.*, *Garcia*, 528 F.3d at 487.

Lewis does not argue that the warrant was so lacking in probable cause that it would have been unreasonable for an officer to accept the conclusions of the approving court commissioner (and the prosecutor who approved the warrant (ECF No. 17-1, ¶ 21)). Therefore, the court regards Lewis as having conceded that this commonly-made argument would not merit suppression. Lewis's only argument as to why *Leon* ought not apply is that Ayala *may have been* dishonest or reckless in preparing the affidavit because he failed to include any negative information about the informant. (ECF No. 28 at 2.) Specifically, Lewis notes that the affidavit contains no information about the informant's criminal history or motivation for assisting law enforcement. But Lewis cannot argue that the omission of these facts was dishonest or reckless because he does not know what the facts are—which is why he has filed a separate motion seeking immediate disclosure of relevant *Giglio* information regarding the informant, *see Giglio v. United States*, 405 U.S. 150 (1972). (ECF No. 19.)

The "dishonest or reckless" exception to *Leon* has been frequently recited as a means of rebutting the presumption of good faith that attends a search warrant. That suggests it is a matter for the court to consider after concluding the warrant is unsupported by probable cause. *See, e.g.*, *United States v. Reichling*, 781 F.3d 883, 889 (7th Cir. 2015); *United States v. Miller*, 673 F.3d 688, 693 (7th Cir. 2012); *United States v. Searcy*, 664 F.3d 1119, 1124 (7th Cir. 2011); *United States v. Mitten*, 592 F.3d 767, 771 (7th Cir. 2010); *United States v. Bell*, 585 F.3d 1045, 1052 (7th Cir. 2009); *United States v. Woolsey*, 535

F.3d 540, 546 (7th Cir. 2008); *Garcia*, 528 F.3d at 487; *United States v. Otero*, 495 F.3d 393, 398 (7th Cir. 2007); *United States v. Mykytiuk*, 402 F.3d 773, 777 (7th Cir. 2005); *Peck*, 317 F.3d at 757. But this exception to *Leon* is infrequently discussed. *Cf. Garey*, 329 F.3d at 577-78 (discussing briefly and dismissing defendant's argument that *Leon* should not save a warrant unsupported by probable cause because affiant's omissions misled the issuing judicial officer).

The "dishonest or reckless" exception emerges from *Leon* itself, but the *Leon* court's discussion suggests a slightly nuanced application from that suggested by Lewis. Lewis seems to be arguing that, once the court finds the affidavit was unsupported by probable cause, proof of any dishonest or reckless omission or misstatement with respect to that warrant will automatically result in suppression, regardless of the materiality of the misstatement or omission. But the court does not read *Leon* in this way.

*Leon* simply identified three ways in which a defendant may challenge a search warrant. The first is by demonstrating that the warrant was based on a dishonest or reckless statement of law enforcement. *Leon*, 468 U.S. at 914 and 923 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). The second is by showing that the issuing judicial officer abandoned his neutral and detached role. *Leon*, 468 U.S. at 914 (citing *Aguilar v. Texas*, 378 U.S. 108, 111 (1964)); *see also id*. at 923 (citing *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979)). And the third is by showing that the warrant was not supported by probable

9

cause. *Leon*, 468 U.S. at 915 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). With respect to the first two, the objective good-faith of the executing officer is irrelevant and thus the *Leon* good-faith exception will not save a warrant found deficient for either of these reasons. *See Leon*, 468 U.S. at 913-17. As for the third, the *Leon* good faith exception applies unless it was objectively unreasonable for an officer to rely on the warrant because it was "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" *id*. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)), or because the warrant was "so facially deficient -- *i.e.*, in failing to particularize the place to be searched or the things to be seized -- that the executing officers cannot reasonably presume it to be valid," *id*.

### 2.2. *Franks*

Consequently, what Lewis presented as an exception to *Leon* is more accurately presented as a challenge under *Franks*. Under *Franks*, suppression of evidence is appropriate when (1) there is an omission or misrepresentation with respect to a search warrant affidavit; (2) the omission or misrepresentation was intentional; and (3) the omission or misrepresentation was material to the finding of probable cause. *United States v. Mullins*, 803 F.3d 858, 862 (7th Cir. 2015). And because a *Franks* challenge does not depend on whether the warrant on its face establishes probable cause, the court's conclusion that the warrant was supported by probable cause does not end the analysis.

But the first step for a defendant's *Franks* challenge is "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and … the allegedly false statement is necessary to the finding of probable cause." *United States v. McMurtrey*, 704 F.3d 502, 508 (7th Cir. 2013) (quoting *Franks*, 438 U.S. at 155-56; citing *United States v. Spears*, 673 F.3d 598, 604 (7th Cir. 2012)). This is a "relatively difficult" standard for a defendant to meet. *Id.* at 509; *see also United States v. Daoud*, 755 F.3d 479, 488 (7th Cir. 2014) (Rovner, J., concurring) (referring to the defendant's burden as "an onerous one"). Speculation is insufficient. *McMurtrey*, 704 F.3d at 509.

Lewis admittedly has not made such a substantial preliminary showing. Rather, he seeks discovery in the hope it will uncover material information that was not included in the affidavit. But he has not cited any case law in support of such a request – a fishing expedition into what might have been omitted from the affidavit. The only such authority Lewis cited – *Giglio v. United States*, 405 U.S. 150 (1972) – applies only if the witness is called at trial. *See United States v. Silva*, 71 F.3d 667, 670-71 (7th Cir. 1995).

The court is not persuaded that Lewis has demonstrated he is entitled to the information he seeks. An affidavit could always say more. In every case where a confidential informant is used to support an application for a search warrant a defendant could hope to uncover some omitted fact that might undermine the existence of probable cause. *See United States v. Chapman*, 112 F. App'x 469, 475 (6th Cir. 2004)

(unpublished). Lewis offers no reason for concluding that ordering the government to disclose the information he seeks is likely to result in the requisite "substantial preliminary showing." "[H]e merely asks for permission to begin a fishing expedition." *Id.* at 474-75. That is insufficient. *Id.*

Therefore, the court will deny Lewis's motion for disclosure (ECF No. 19) and recommend that his motion to suppress physical evidence (ECF No. 17) be denied.

### 3. Motion to Suppress Statements

Lewis seeks to suppress his statements on the ground that they were the result of the "question first and warn later" strategy condemned in *Missouri v. Seibert*, 542 U.S. 600 (2004). (ECF No. 18.) Detective Jason Enk and Officer Rodolfo Ayala did not advise Lewis of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), until after about eight minutes of questions where Enk "asked Lewis for a great deal of biographical information, to include where his mother and father reside, the names and ages of Lewis' siblings and six children, his employment history, whether he had ever served in the military, his tattoos, and a self-report regarding details of his criminal history." (ECF No. 18 at 2.) Ayala then asked Lewis if he knew anyone carrying firearms. (ECF No. 18 at 2.) Enk described this questioning in a report "as completing the "Milwaukee Police Department form PA-45A." (ECF No. 18 at 2.) Lewis argues:

> It's hard to imagine a legitimate police purpose behind most of the questions called for by the police department's "form PA-45A." How does, for instance, knowing where a grown arrestee's parents reside further the inquiring officer's task? The details of an arrestee's criminal history are

> easily and more conclusively available via CCAP and NCIC. The names and ages of an arrestee's children, the arrestee's past employment, and whether the arrestee was ever in the Navy seem to have no task-specific purpose, other than to establish a comfortable (unwarned) rapport.

(ECF No. 18 at 5.)

*Seibert* addressed the specific technique of conducting two-step interrogations. The suspect is interrogated without first advising him of his *Miranda* rights. *See States v. Johnson*, 680 F.3d 966, 978 (7th Cir. 2012). Once he makes an incriminating statement, the suspect is advised of his *Miranda* rights and is re-interrogated until he repeats the incriminating statement. *Id.* "A plurality of the Court reasoned that '[u]pon hearing warnings only in the aftermath of interrogation and just after making a confession, a suspect would hardly think he had a genuine right to remain silent, let alone persist in so believing once the police began to lead him over the same ground again.'" *Bobby v. Dixon*, 565 U.S. 23, 30 (2011) (per curiam) (quoting *Seibert*, 542 U.S. at 613). "[T]he suspect's first, unwarned interrogation left 'little, if anything, of incriminating potential left unsaid,' making it 'unnatural' not to 'repeat at the second stage what had been said before.'" *Bobby*, 565 U.S. at 31 (quoting *Seibert*, 542 U.S. at 616-617 (plurality opinion)).

The court is not persuaded that the preliminary questions asked of Lewis were devoid of a legitimate law enforcement purpose. But even if the court were to accept that the questioning served no purpose other than building rapport with Lewis before advising him of his *Miranda* rights, it would not offend *Seibert* or the spirit of *Miranda*. *Miranda* and *Seibert* condemn unwarned *interrogation*; because the pre-warning

13
Case 2:17-cr-00168-PP   Filed 08/24/18   Page 13 of 14   Document 31

questions put to Lewis were not "reasonably likely to elicit an incriminating response," *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980), the concerns of *Seibert* and *Miranda* are not implicated. *See Johnson*, 680 F.3d at 979 ("Johnson's case fails to satisfy either *Seibert* test because he has not shown the existence of a prewarning custodial interrogation"; although he was in custody, reading the search warrant to the defendant was not interrogation.). "Not only was there no unwarned interrogation, "there was no earlier confession to repeat." *Bobby*, 565 U.S. at 31. "This case is simply not the type of situation *Seibert* intended to address." *Johnson*, 680 F.3d at 979.

**IT IS THEREFORE ORDERED** that Lewis's motion for disclosure (ECF No. 19) is **denied**.

**IT IS FURTHER ORDERED** that the United States' motion to file its response instanter (ECF No. 26) is **granted**.

**IT IS RECOMMENDED** that Lewis's motion to suppress physical evidence (ECF No. 17) be **denied.**

**IT IS FURTHER RECOMMENDED** that Lewis's motion to suppress statements (ECF No. 18) be **denied**.

Dated at Milwaukee, Wisconsin this 24th day of August, 2018.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge